# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---------------------------------------------------------------------------------------------------------------

James Irving Dale,                                  Case No: 12-CV-383 (PJS/JSM)

       Plaintiff,

vs.

                                        **DEFENDANTS' MEMORANDUM**
Joel L. Brott, Brian Frank, Angela      **OF LAW IN SUPPORT OF MOTION**
Knutson, Dave Isais, Lisa Kachmarek,    **FOR SUMMARY JUDGMENT**
Bill (William) Hilden, and Unknown
Correctional Officer,

       Defendants.

---------------------------------------------------------------------------------------------------------------

Defendants Joel L. Brott, Brian Frank, Angela Knutson, Dave Isais, Lisa Kachmarek, and Bill (William) Hilden submit the following memorandum of law in support of their motion for summary judgment.

## ISSUES ON SUMMARY JUDGMENT

A. Whether the Defendants are entitled to summary judgment as a matter of law with regard to Plaintiff's individual capacity § 1983 claims arising out of alleged First, Sixth and Fourteenth Amendment violations.

B. Whether the Defendants are entitled to summary judgment as a matter of law with regard to Plaintiff's official capacity § 1983 claims arising out of alleged First, Sixth and Fourteenth Amendment violations.

C. Whether the Defendants are entitled to summary judgment on the grounds of qualified immunity.

D. Whether the direct and supervisory claims against Defendants Joel L. Brott, Brian Frank, Dave Isais and Lisa Kachmarek are subject to summary judgment.

## STATEMENT OF THE RECORD

Defendants submit the following in support of their motion for summary judgment:

| | |
|---|---|
| Exhibit A | Sherburne County Sheriff's Office Jail Booking Sheet |
| Exhibit B | Findings of Fact, Conclusions of Law, Verdict and Order dated April 16, 2012 (*State of Minnesota v. James Irving Dale*, Sherburne County District Court, Court File No.: 71-CR-11-942) |
| Exhibit C | Complaint (*State of Minnesota v. James Irving Dale*, Sherburne County District Court, Court File No.: 71-CR-11-942) |
| Exhibit D | Excerpts of James Irving Dale's Jail Activity Log |
| Exhibit E | Excerpts of Deposition of James Irving Dale |
| Exhibit F | Memorandum from Dave Isais to James Dale dated November 30, 2011 |
| Exhibit G | Excerpts of James Dale's Inmate Grievance Forms and Responses |
| Exhibit H | Correspondence from James Dale to Angela Knutson dated December 26, 2011 |
| Exhibit I | Memorandum from Angela Knutson to James Dale dated December 29, 2011 |
| Exhibit J | Sherburne County Jail Law Library List |
| Exhibit K | Itemization of James Dale Law Library Activity |
| Exhibit L | Incident Report dated December 16, 2011 |
| Exhibit M | Video of December 21, 2011 Disciplinary Hearing for James Dale |
| Exhibit N | Excerpts of Sherburne County Jail Records for Allen Giller |
| Exhibit O | Hearing Request Form and Questions prepared by James Dale |
| Exhibit P | Notice of Disciplinary Hearing dated December 20, 2011 |

Exhibit Q       Formal Disciplinary Hearing Procedure and Hearing Notes prepared
                by Lisa Kachmarek

Exhibit R       Disciplinary Hearing Findings dated December 21, 2011

Exhibit S       Excerpts of Sherburne County Jail Inmate Handbook

Exhibit T       Correspondence/Appeal from James Dale to Angela Knutson dated
                December 25, 2011

Exhibit U       Memorandum from Angela Knutson to James Dale dated December
                28, 2011

Exhibit V       Legal Declaration of Jared Thomas Swanson dated May 21, 2012

Exhibit W       Sherburne County Sheriff's Office Incident Report regarding
                complaint against Allen Giller

Exhibit X       Incident Report dated December 17, 2011

Exhibit Y       Excerpts of Court Orders and Defendant's Motions (*State of
                Minnesota v. James Irving Dale*, Sherburne County District Court,
                Court File No.: 71-CR-11-942)

## STATEMENT OF FACTS

### I.   JAMES IRVING DALE'S DETENTION IN SHERBURNE COUNTY

Plaintiff James Irving Dale was booked into the Sherburne County Jail on June 30,

2011.   (Exhibit A)   Dale was initially detained on charges of second degree burglary.

(*Id.*)   He was convicted of second and third degree burglary on April 16, 2012 and was

sentenced on May 30, 2012.   (Exhibits B and C)   Dale was discharged from the

Sherburne County Jail on May 31, 2012.  (Exhibit D)

Dale commenced suit in February 2012.  (Docket No. 1)  He subsequently filed a

motion to amend his complaint, and upon the granting of his motion, Dale filed his

Amended 42 U.S.C. 1983 Civil Rights Complaint and Action ("Amended Complaint"). (Docket No. 11)   In support of his Amended Complaint, Dale also filed Plaintiff's Amended Legal Declaration in Support of 42 U.S.C. 1983 Action ("Amended Legal Declaration").   (Docket No. 14)   Dale's Amended Complaint alleges that the Defendants violated his First, Sixth and Fourteenth Amendment rights under the United States Constitution.   (*Id.*)   He also alleges that the Defendants violated the Equal Protection clause of the United States Constitution.   (*Id.*)   The Defendants address the factual background of each claim set forth in Dale's Amended Complaint as follows:

## II.   DALE'S COMMUNICATIONS WITH COUNSEL AND ACCESS TO LEGAL MATERIALS

Dale alleges that he was denied access to "case law or cited judicial authorities" and that he was therefore unable to litigate his criminal case as a pro se defendant. (Amended Complaint)   Dale was booked into the Sherburne County Jail on June 30, 2011, and during his initial period of confinement, he was represented by counsel. (Exhibit E, p. 11)   Dale was not confirmed as pro se by Sherburne County Jail staff until November 30, 2011.   (Exhibit F)

During the period Dale was represented by counsel, he was able to communicate with his attorney by telephone and correspondence and was able to meet with his attorney in person at the Sherburne County Jail.   (Exhibit E, p. 12)   Dale's jail activity log confirms that he met with counsel on July 18, August 9, August 18, September 12, and October 20, 2011.   (Exhibit D)   Dale also spoke with his attorney about case law, and on at least one occasion, he was provided copies of cases that he had specifically requested.

(Exhibit E, p. 12)   He discussed his defense with counsel and specifically discussed motions that should be filed.   (*Id*. at p. 13)

As set forth in his Amended Complaint and Amended Legal Declaration, Dale filed three grievances with regard to his access to legal materials.   (Exhibit G)   Dale's grievances were filed while he was represented by counsel and prior to notice to the Defendants that he was proceeding pro se.   On July 6, 2011, Dale reported that he was being denied access to federal case law and that it was a violation of the First Amendment.   (*Id*.)   He also claimed that it prevented him from "making informed legal decisions and litigating an ongoing *civil* issue."   (*Id*.) (emphasis added)   On July 18, 2011, the same day he met with his attorney, Dale submitted a second grievance with regard to access to case law.   (*Id*.)   He specifically alleged that he was unable to litigate cases in which he was proceeding pro se.   (*Id*.)   At the time of the July 18th grievance, Dale was not proceeding pro se on his criminal matter.   On August 1, 2011, Dale submitted his final formal grievance with regard to his access to legal materials, referencing "***other criminal matters in other counties***," which had not been referenced in previous grievances, and ***two pending civil actions***.   (*Id*.) (emphasis added)   Once again, Dale made no reference to his ongoing criminal defense in Sherburne County District Court.   The Defendants responded to each of Dale's grievances, informing him that the jail was not required to maintain case reporters and that they did not look up case law or make copies of case law for inmates.   (*Id*.)

Dale did not submit another complaint with regard to his access to legal materials until December 26, 2011.   (Exhibit H)   In a letter to Jail Administrator Angela Knutson,

Dale referenced a complaint with regard to his diet, which appears to have been of primary concern, but he also complained of his continued inability to review case law. (*Id.*)  In the letter, Dale alleged being granted access to case law a number of years earlier at the Sherburne County Jail, and he referenced the ability to access case law at other county jails.  (*Id.*)  Administrator Knutson promptly replied to Dale on December 29, 2011, stating that there was no recollected history of Sherburne County inmates having access to case law and that one of the other counties cited by Dale had such a program, but it was very short-lived.  (Exhibit I)  Dale made no further complaints with regard to his access to case law.  (Exhibit E, p. 20)

In its law library, the Sherburne County Jail provides access to Minnesota Statutes, Minnesota Rules of Court, Minnesota's Criminal Law Handbook, federal statutes and rules, Black's Law Dictionary, and books regarding criminal and habeas corpus procedures.  (Exhibit J)  Dale's jail records reveal that he checked out legal materials on approximately 54 occasions from July 5, 2011 to March 2, 2012.  (Exhibit K)  With regard to Dale's additional claims referenced below, these records also reveal that he had access to the law library while he was housed in Delta North from December 22, 2011 to February 4, 2012.  (*Id.*; Exhibit D)

## III.   DALE'S PRO-SE STATUS AND ALLEGED "RETALIATION"

Dale's Amended Complaint also alleges that Corrections Officer Bill Hilden retaliated against him based on his status as a pro se criminal defendant.  (Amended Complaint)  Specifically, Dale alleges that Hilden made statements regarding his pro se status on three or four occasions and that he retaliated against him by filing a disciplinary

report following an incident that occurred in December 2011.  (*Id*.; Exhibit E, pp. 21-22, 26-28)

On December 15 and December 16, 2011, Dale was involved in an altercation with fellow inmate Allen Giller.  (Exhibit L)  Dale and Giller were housed in the Community Release area of the jail, and on December 15th, Giller alleged that Dale moved a shower mat, causing him to slip and fall and injure his head.  (*Id*.; Exhibit E, p. 26)  The following day, Giller alleged that Dale had once again moved the shower mat, and he asked Dale to return it to its original location.  (*Id*.)  Dale refused to move the mat, and they ultimately got into a verbal altercation.  (*Id*.)

In his Incident Report, Officer Hilden noted that he became aware of the altercation when Dale and Giller were in the dayroom area of Community Release "facing off and yelling at each other."  (Exhibit L)  Officer Hilden intervened and spoke with Dale and Giller.  (*Id*.)  Officer Hilden reported that Giller reiterated his complaint that Dale moved a shower mat, and when asked if it was true, Dale responded, "Ya. I'll go fix the mat."  (*Id*.)  Dale and Giller told Officer Hilden that the incident was resolved, and they proceeded to separate areas of the dayroom.  (*Id*.)  However, a short while later, Dale walked over to the table where Giller was seated and sat across a table from him. (*Id*.)  Dale once again began yelling, and Giller got up to return to his cell.  (*Id*.)  Officer Hilden placed both Dale and Giller in lockdown, and after considering all sides, he determined that Dale was at fault for escalating the incident.  (*Id*.)  Officer Hilden noted in his report that Dale admitted that he was wrong and that he "could have probably handled it differently."  (*Id*.)  Officer Hilden determined that Dale should be locked down

for three days, and therefore, Dale was placed in segregation pending a disciplinary hearing. (*Id*.)

During his recent deposition, Dale admitted that he was seated after the initial conversation with Officer Hilden. (Exhibit E, p. 27)  He also admitted that he was the first to stand up and that he walked over to where Giller was seated. (*Id*.)  Dale's deposition testimony, in this regard, contradicts the statement he gave during his disciplinary hearing on December 21, 2011. (Exhibit M)  Dale admits that he confronted Giller, because he was yelling across the dayroom and calling him names. (Exhibit E, p. 27)  Dale denied admitting to Officer Hilden that he moved the shower mat, and he denied stating that he was in the wrong. (*Id*. at pp. 27, 34)  He admits, however, telling Officer Hilden that he should not have said anything to Giller and that he should have just let it go. (*Id*. at 34; Exhibit M)  Dale has also admitted that he got loud during the altercation. (Exhibit M)

Generally, Dale has alleged that Officer Hilden retaliated against him because of his pro se status and that he was punished following the December 16, 2011 incident while Giller was not punished. (Amended Complaint; Exhibit E, p. 49)  Although Giller was not formally disciplined following the December 16, 2011 incident, his records reflect that he was warned following the incident. (Exhibit N)

Dale alleges that on three or four occasions Officer Hilden made comments such as "Mr. Pro Se" and "jailhouse attorney." (Exhibit E, p. 21)  After the December 16, 2011 incident, Dale alleges that Officer Hilden stated, "Let's see how much law your smart ass practices now." (*Id*. at pp. 22-23)  Dale did not know Officer Hilden prior to his

most recent incarceration at the Sherburne County Jail, and he had no altercation or other problem with Officer Hilden prior to this incarceration.  (*Id*. at p. 22)  Other than the statements referenced above, Dale is unable to cite any other incident in which Hilden retaliated against him or any other pro se inmate.  (*Id*. at p. 24)  Dale remained at the Sherburne County Jail for another five months after the December 16, 2011 incident, and Dale does not claim that Officer Hilden made any further statements with regard to his pro se status or retaliated against him in any fashion.  Most significantly, Dale never filed a grievance with regard to the alleged statements made by Officer Hilden prior to December 16, 2011.  When Dale prepared questions to be asked at his disciplinary hearing, they included no reference to Hilden's alleged statements or bias.  (Exhibit O)  During his disciplinary hearing, Dale made no reference to any statements made by Officer Hilden, and he did not allege that he retaliated against him based on his pro se status.  (Exhibit M)  Dale also filed a grievance with regard to the incident on December 19, 2011.  (Exhibit G)  He alleges that Officer Hilden showed favoritism to older inmates and federal inmates, but he makes no reference to a bias or favoritism due to his pro se status.  (*Id*.)

In support of his claims, Dale has also alleged that Giller verbally threatened him during the December 16, 2011 incident and that the threat was never investigated.  (Amended Complaint; Exhibit E, p. 27)  In accordance with jail procedure, a disciplinary hearing was held on December 21, 2011.  (Exhibits P and Q)  Prior to the hearing, Dale identified four witnesses in support of his claim that Giller verbally threatened him – Gerald Christenson, Jeremy Berg, Jared Swanson and Joe Selisker.  (Exhibit M; Exhibit

O)  During his deposition, Dale alleged that Sergeant Lisa Kachmarek made a mistake by calling Joe Selisker as a witness, but he also admitted that he prepared the "Hearing Questions" document that identified Selisker as a witness on his behalf.  (Exhibit E, p. 35; Exhibit O)  The video of the disciplinary hearing, in this regard, also contradicts Dale's deposition testimony.  (Exhibit M)  At the hearing, the witnesses identified by Dale provided inconsistent testimony with regard to many of Dale's questions, and most significantly, Jared Swanson and Joe Selisker stated that they did not recall or did not hear any threats made by Giller.  (Exhibit M; Exhibit Q)  Additionally, Joe Selisker testified that Dale escalated the situation, and refused to "let it go" when Dale walked away but returned to confront Giller on three occasions.  (*Id.*)  Jeremy Berg testified that Dale moved the shower mat.  (*Id.*)  All three witnesses testified that they had never seen Giller "boss other inmates around" or act in a threatening manner.  (*Id.*)

After Dale's disciplinary hearing, Lisa Kachmarek concluded that Dale had violated Rules 6 and 37 of the Sherburne County Jail Inmate Handbook.  (Exhibit R)  Rules 6 and 37 provide as follows:

### XI.  Prohibited Acts

* * *

6.    Disturbing Others.  Inmates shall not create noise to disturb others.  Noises are identified as, but not limited to, yelling, loud talking, whistling, singing, or noise produced with items being hit by other objects.  This rule is enforced twenty-four (24) hours per day in cells, living units, hallways, library, activity room, classroom, booking/admissions area, offices, and the master control area.

* * *

37.     Resisting or interfering with any staff member in the performance of
        their duties.

(Exhibit S)  Sergeant Kachmarek concluded that Dale was loud and disturbed others, in

violation of Rule 6, and that Officer Hilden had to interrupt his job duties on two

occasions due to Dale's actions, which violated Rule 37.   (Exhibit R)   Dale appealed

Sergeant Kachmarek's findings in a memorandum to Administrator Knutson.  (Exhibit T)

Administrator Knutson reviewed Dale's appeal, the video of the disciplinary hearing,

Sergeant's Kachmarek's findings, and the submitted reports and concluded that Dale's

due process rights had not been violated and that the sanctions were appropriate and

consistent with similar incidents in the jail.  (Exhibit U)

        During his recent deposition, Dale conceded that he had no issue or complaint

with regard to Sergeant Kachmarek's investigation and handling of the disciplinary

hearing.  (Exhibit E, p. 39)  Dale also conceded that he received due process with regard

to the disciplinary sanctions.  (*Id*.)  Dale confirmed that he has no direct claim against

Sergeant Kachmarek, admitting that ". . . generally when you file a lawsuit, you name

everybody and let the court sort it out later." (*Id*. at p. 40)

        Months after the incident, in the context of the instant litigation, Dale identified

additional witnesses who were never referenced at the time of the disciplinary hearing

Erik Rotz and Joseph Keeler.   (Amended Legal Declaration)   Dale has also recently

provided the Legal Declaration of Jared Thomas Swanson.   (Exhibit V)   Swanson's

declaration is notable for the fact that it directly contradicts the testimony he provided to

Sergeant Kachmarek on December 21, 2011.  (Exhibit M)  During Dale's disciplinary

hearing, Swanson did not recall a threat being made by Allen Giller, but he now alleges that Giller threatened Dale and kicked a chair at 3:45 p.m. on the date of the incident. (Exhibit M; Exhibit V)  Swanson's declaration also includes allegations with regard to Officer Hilden that were never raised and never referenced during Dale's disciplinary hearing and were never raised in Dale's hearing submissions or grievance.  (Exhibit G; Exhibit M; Exhibit V)

Contrary to Dale's allegations, his claim that he was threatened by Allen Giller on December 16, 2011 was reported to and investigated by deputies with the Sherburne County Sheriff's Office.  (Exhibit W)  It was determined that charges would not be pursued against Giller.  (*Id.*)

## IV.    DALE'S HOUSING AT SHERBURNE COUNTY JAIL

Dale's Amended Complaint includes allegations that he was held in a "disciplinary unit" for 42 days without a hearing or due process.  (Amended Complaint) He also alleges that he was prevented from defending himself as a result of his placement in a "disciplinary unit" for 42 days.  (*Id.*)

Dale was in disciplinary segregation for three days following the December 16, 2011 incident with Allen Giller.  From December 19 to December 22, 2011, Dale was once again housed in disciplinary segregation for violating jail rules.  (Exhibit X)  On December 17, 2011, Dale got into a verbal altercation with Corrections Officer Kelly Sobon, during which he stated, "Fuck you, you fat bitch.  I'm going on a hunger strike now.  Be sure to tell Captain Isais not to give me any fucking food."  (*Id.*)  Dale also showed Officer Sobon his middle finger and began swearing about the December 16,

2011 incident. (*Id.*) Dale was placed on notice of violating four jail rules, and he admitted to violating the rules as referenced by Officer Sobon. (*Id.*) Therefore, he also waived a disciplinary hearing on the matter and accepted the sanctions imposed by Officer Sobon. (*Id.*)

After being released from disciplinary segregation on December 22, 2011, Dale was housed in the Delta North unit of the jail. (Exhibit D) Sherburne County Jail inmates are transferred to Delta North after being transferred out of disciplinary segregation for a minimum of 15 days. (Affidavit of Brian Frank, ¶ 3) An inmate is eligible to be transferred to the general population after 15 problem-free days in Delta North. (*Id*. at ¶_4) Delta North inmates are locked down for half a day, and there activities are limited. (*Id*. at ¶ 5) However, they are not subject to punitive disciplinary sanctions such as 23 hour lockdown and the loss of privileges such as the restricted use of the commissary and loss of access to the library cart, television, and general visitation. (*Id*.) Inmates in Delta North are allowed access to television, general visitation, commissary, and the library cart. (*Id*.) They are also allowed one-on-one clergy visits and other professional visits. (*Id*.)

On January 14, 2012, Dale filed a grievance with regard to his placement in Delta North. (Exhibit G) Administrator Knutson promptly responded to Dale's grievance, confirming that Dale was not in disciplinary segregation and noting that he remained in Delta North because of a medical issue and due to his no-contact status with another inmate. (*Id*.) Dale has confirmed that he had two medical conditions that limited his ability to be placed because he could not have a bottom bunk. (Exhibit E, p. 43) He also

confirmed that he had a no-contact status with another inmate.  (*Id.*)  During this period,
Dale recalled that the other inmate with whom he was to have no contact was housed in
the Community Release area of the jail.  (*Id.* at p. 44)  Additionally, Dale's jail records
reveal that he had problem reports on January 2, January 16, and January 17, 2012, which
would have delayed his transfer out of Delta North.  (Exhibit D; Affidavit of Brian Frank,
¶ 7)  On February 4, 2012, the inmate Dale was to have no contact with was transferred
out of Community Release, and therefore, Dale was transferred out of Delta North on the
same date.  (*Id.*)

As was referenced above, Dale was also able to review legal materials on
numerous occasions while he was housed in Delta North.  (Exhibit D)  Most
significantly, filings from Dale's criminal proceedings reveal that he was actively and
aggressively defending his case during this period.  (Exhibit Y)  From December 27,
2011 to January 27, 2012, Dale filed 11 motions or petitions and wrote correspondence to
the Sherburne County Attorney's Office.  (*Id.*)  Dale has also confirmed that he was able
to argue his motions before the Sherburne County District Court Judge.  (Exhibit E, pp.
16-17)  In a Pre-Trial Order dated March 6, 2012, Sherburne County District Court Judge
Mary A. Yunker addressed Dale's motion for the appointment of standby counsel.
(Exhibit Y)  Judge Yunker found as follows:

> . . . Defendant Dale has demonstrated more than a basic knowledge of
> court procedures; he is aware of how to request subpoenas; he has
> demonstrated the ability to read and apply the Rules of Criminal Procedure;
> he understands what the State is seeking to introduce as Spreigl or "other
> crimes" evidence; and he understands the State's request to impeach his
> testimony with evidence of his prior convictions.  Generally, Defendant
> Dale evidenced substantial knowledge of court processes and procedures

and was able to articulate all of his arguments and requests without difficulty.

(*Id*.)  Dale never filed a motion with regard to his claims against Officer Hilden, the December 16, 2011 incident, his ability to access case law or his housing in the Sherburne County Jail.  Contrary to Dale's allegations, Judge Yunker's Orders do not include a reference to Dale's inability to cite case law.

## V.   DIRECT AND SUPERVISORY CLAIMS

As was referenced above, Dale confirmed during his recent deposition that he has no claim against Sergeant Lisa Kachmarek.  He also confirmed that the only direct involvement Captain Dave Isais had with this matter was his claim that the alleged threat was never investigated by the Sherburne County Sheriff's Office, as promised by Captain Isais.  (Exhibit E, p. 50)  He also alleged that Captain Isais "tacitly authorized" the unconstitutional actions of Officer Hilden, because he stated that he would have placed both Giller and Dale in lockdown after the December 16, 2011 incident.  (*Id*. at p. 51)  He cited no other actions or statements by Captain Isais that tacitly authorized any alleged constitutional violations.  (*Id*. at pp. 51-52)  Dale confirmed that Sheriff Joel Brott and Jail Administrator Brian Frank had no direct involvement with any of the allegations set forth in his Amended Complaint and that he had no knowledge or information supporting his claim that they tacitly approved or authorized any alleged constitutional violations.  (*Id*. at pp. 53-54)

## ARGUMENT

### I.   STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  "In order to successfully oppose a motion for summary judgment, a party cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial."  *Hunt v. IBM Mid American Employee's Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn. 1986); *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).  The mere existence of a factual dispute does not, by itself, make summary judgment inappropriate.  Rather, the facts in dispute must be material.  *Pischke v. Kellen*, 384 N.W.2d 201, 205 (Minn. Ct. App. 1986).  A fact is "material" and precludes summary judgment if the fact is of such a nature that it "will affect the result or outcome of the case depending on its resolution."  *Rathbun v. W. T. Grant Co.,* 219 N.W.2d 641.646 (Minn. 1974); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case."  *Celotex*, 477 U.S. at 325.  Once the

16

moving party has discharged this burden, the burden then shifts to the non-moving party to set forth specific facts showing a genuine triable issue.  Fed. R. Civ. P. 56.

In order to create a genuine issue of material fact, the non-movant must do more than present some evidence on a disputed issue.  The Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986):  "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.   If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Furthermore, "where the record taken as a whole could not lead a rational finder of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Electric Industrial Company v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

II.   **JAMES DALE HAS FAILED TO DEMONSTRATE A GENUINE ISSUE OF MATERIAL FACT WITH REGARD TO HIS INDIVIDUAL CAPACITY § 1983 CLAIMS, AND THEREFORE, THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.**

Dale's Amended Complaint alleges that the Defendants violated the First, Sixth and Fourteenth Amendments to the United States Constitution, either directly or through deliberate indifference and tacit authorization.  (Amended Complaint)  Dale alleges that the Defendants, either directly or indirectly, violated his First Amendment rights by retaliating against him for proceeding pro se on his criminal matter.  (*Id*.)  He alleges that his Sixth Amendment and Fourteenth Amendment due process rights were violated by the Defendants' denial of his access to case law and his housing in Delta North.  (*Id*.)  Dale also alleges that his Fourteenth Amendment equal protection rights were violated when he was disciplined following the December 16, 2011 incident and when he was

housed in Delta North.  (*Id.*)  Dale's allegations are unsupported by the record, and there remain no genuine issues of material fact.  Therefore, summary judgment is appropriate.

### A.    First Amendment

In order to demonstrate a First Amendment retaliation claim under § 1983, a plaintiff must establish that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity."  *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004); see also *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012); *L.L. Nelson Enters., Inc. v. County of St. Louis*, 673 F.3d 799 807-808 (8th Cir. 2012).

The Courts have held that "prison officials may not punish an inmate because he exercises his constitutional right of access to the courts."  *Sisneros v. Nix*, 95 F.3d 749, 751 (8th Cir. 1996); see also *Goff v. Burton*, 7 F.3d 734, 736-737 (8th Cir. 1993).  In the prison setting, the Courts have also held that disciplinary actions are considered "adverse action."  *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); see also *Goff*, 7 F.3d at 738 and *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990).  However, in order to maintain such a claim a plaintiff must demonstrate that the disciplinary charges were false.  *Id*.  As the Court stated in *Orebaugh*,

> While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon ***false allegations***, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform.  Any other rule would allow a prisoner to openly flout prison rules after filing a grievance and then bring a claim under section 1983 arguing that prison officials disciplined him in retaliation for his filing a grievance.

(emphasis added)  As the Court stated in *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008), ". . . A defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation."  (Citing *Goff*, 7 F.3d at 738-739)   Additionally, in order to demonstrate the third *Revels* element, a plaintiff must demonstrate that "but for a retaliatory motive the prison official would not have filed the disciplinary report."  *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009); see also *Beaulieu*, 690 F.3d at 1025.

In this case, Dale has failed to present evidence demonstrating that Officer Hilden's Incident Report was false.  He has also failed to present sufficient evidence to demonstrate that he would not have been disciplined "but for" the alleged discriminatory motives of Officer Hilden.  Dale admitted that he was loud during the December 16, 2011 incident, and he admitted that he was the first person to stand up and confront Allen Giller.  Dale's witnesses supported Officer Hilden's observation that Dale walked across the day room and verbally confronted Giller, escalating the incident after both parties told Officer Hilden they had resolved their dispute and had gone to separate areas of the room. Indeed, one of Dale's identified witnesses testified that Dale returned to confront Giller on three occasions and stated that he simply wouldn't "let it go."  Two witnesses also stated that they did not hear any threats from Allen Giller.  The preponderance of the evidence supports the facts set forth in Officer Hilden's Incident Report.

Additionally, Dale's claims that Officer Hilden was motivated by a discriminatory bias arising out of his pro se status were not raised until well after the incident.  Dale did

not raise the issue during his disciplinary hearing, and he did not reference the issue in two written submissions to jail staff on December 19 and December 20, 2011. Dale has conceded that he has no issue with the actions of Lisa Kachmarek, who oversaw the investigation and concluded that he had violated jail rules. Dale's allegation that the alleged threat by Allen Giller was not investigated by the Sheriff's Office has also proven untrue.

Dale has failed to demonstrate that Officer Hilden's disciplinary report was false, and there is certainly "some evidence" that Dale actually committed the violations. Therefore, summary judgment is appropriate.

### B.     Sixth Amendment – Access to the Courts

Under well-established law, inmates have a constitutional right to reasonably meaningful access to the courts. *Lewis v. Casey*, 518 U.S. 343, 351-352 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Williams v. Hobbs*, 658 F.3d 842, 851 (8th Cir. 2011). In order to pursue a claim of denial of access to the courts, a plaintiff must demonstrate that

> . . . the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in an actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

*Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). However, the state is not required to "enable the prisoner to *discover* grievances, and to *litigate effectively* once in court." *Lewis*, 518 U.S. at 354 (emphasis in original). The prisoner's due process right to access must be balanced against the legitimate penological interests of the state in

maintaining the facility. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052 (8th Cir. 1989). The Eighth Circuit Court of Appeals has held that representation by counsel with regard to the affected claim or proceeding would provide a "reasonably adequate opportunity" to litigate a claim. *Entzi v. Redmann*, 485 F.3d 998, 1005 (8th Cir. 2007).

In this case, Dale was represented by counsel during the initial five months that he was incarcerated at the Sherburne County Jail. Dale has confirmed that he was able to communicate with his attorney, and he met with him on a number of occasions at the jail. Dale has conceded that he was represented by counsel during the period he filed grievances with regard to his access to case law, and he admits that he was provided copies of requested case law by his attorney. During this period, Dale had a "reasonably adequate opportunity" to defend himself in light of his representation by counsel.

After terminating his attorney and choosing to proceed pro se, Dale continued to have frequent access to the jail's law library, including during the period when he was housed in Delta North. Dale aggressively and actively defended himself, and the Sherburne County District Court Judge assigned to his case concluded that Dale had demonstrated significant knowledge of the Court's rules and procedures and that he did not require the assistance of advisory counsel.

Most significantly, Dale's Amended Complaint and the record before the Court fail to identify an "actual injury" arising out of his inability to review case law after choosing to proceed pro se. Dale has conceded that he was able to file motions and present his arguments to the Court. As the record reflects, Dale's arguments were thoroughly reviewed by the Court, and the Court believed that Dale was able to

adequately represent himself. Dale was also able to prepare for trial, file pretrial submissions and call witnesses in his defense. Under *Lewis*, Dale must demonstrate an "actual injury" that hindered a meritorious claim. Dale has failed to identify or specify an "actual injury," and therefore, his claim with regard to his access to the courts is subject to summary judgment.

### C.    Fourteenth Amendment - Due Process

At the time of his housing in Delta North, Dale was a pretrial detainee. Therefore, his claim that he was punished without due process when he was placed in Delta North must be considered under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010); *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). "Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris*, 601 F.3d at 809 (citing *Bell*, 441 U.S. at 535)

When considering a plaintiff's conditions of pretrial detention, the Court must review the totality of the circumstances. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Additionally, a particular condition or restriction does not amount to punishment if it is reasonably related to a legitimate governmental objective. *Id*. "The Government has legitimate interests that stem from its need to manage the facility in which the individual is detained. *Id*. As the Supreme Court explained in *Bell v. Wolfish,*

> Absent a showing of an ***expressed intent to punish*** on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or

restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Bell,* 441 U.S. at 538–39 (citations omitted) (emphasis added).

Upon a consideration of the totality of the circumstances, Dale's housing in Delta North was not punitive in nature and was not "punishment" in violation of the Fourteenth Amendment. There has been no demonstration or evidence of an express intent to punish, and the conditions in Delta North are not punitive in nature. At the outset, the restrictions placed upon inmates in Delta North are not comparable to the punitive sanctions placed upon inmates in disciplinary segregation. Inmates in Delta North are not on 23 hour lockdown, and they do not lose privileges such as the unlimited use of the commissary, general visitation, access to the library cart and television. In this case, the record also demonstrates a legitimate governmental objective for Dale's placement in Delta North. By his own admission, Dale's placement was limited due to his medical condition and bottom-bunk restriction and the fact that he was to have no contact with an inmate in the Community Release area of the jail. When space opened up and the inmate with whom Dale was to have no contact was transferred out of Community Release, Dale was promptly transferred out of Delta North. Dale's placement in Delta North was not "punishment" under the Fourteenth Amendment, and therefore summary judgment is appropriate.

### D.     Fourteenth Amendment - Equal Protection

Dale has not alleged that he is a member of a protected class.  Therefore, in order to demonstrate a claim under the equal protection clause of the Fourteenth Amendment, he must demonstrate that he was treated differently from others who were similarly situated.  *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003).  He must also demonstrate that there was no rational relationship between the difference in treatment and a legitimate penal interest. *Phillips*, 320 F.3d at 848; *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998).

In this case, Dale has presented no evidence of other inmates who were similarly situated and who were treated differently.  He has presented no evidence of other inmates who were not disciplined for similar rule violations, and other than his conclusory statements, he has presented no evidence of other inmates with similar housing and no-contact restrictions who were transferred out of Delta North more rapidly.  Dale has failed to present any evidence in support of his claim that the Defendants violated his equal protection rights, and therefore, his claims are subject to dismissal.

### III.    JAMES DALE HAS FAILED TO DEMONSTRATE A GENUINE ISSUE OF MATERIAL FACT WITH REGARD TO HIS OFFICIAL CAPACITY § 1983 CLAIMS, AND THEREFORE, THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.

Dale's claims against the Defendants are set forth in their "personal and professional capacities."  (Amended Complaint)  Public officials can be sued in either their official capacity, individual capacity, or both.  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  Claims against public officials in their official

capacity amount solely to claims against their governmental entity employer.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Under § 1983, a municipality or other local governmental unit, such as a county, may be held liable in a § 1983 action only "for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom."  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); see also *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998); *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998).  As the Court stated in *Mettler*, 165 F.3d at 1204, "For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the 'moving force [behind] the constitutional violation.'"  (quoting *Monell*, 436 U.S. at 694).  However, "before a municipality can be held liable . . . there must be an unconstitutional act by a municipal employee."  *Russell v. Hennepin County*, 420 F.3d 841, (8th Cir. 2005) (citing *Avalos v. City of Glenwood*, 382 F.3d 792, 802 (8th Cir. 2004)).

In this case, Dale's Amended Complaint does not specifically reference a claim arising out of a "policy or custom" from Sherburne County, but he cites the jail's policy with regard to the access to legal materials.  However, as was set forth above, Dale has failed to present sufficient evidence in support of his claim that he was denied access to the courts or that he sustained an actual injury as a result of any alleged deficiency in his access to the courts.  Therefore, summary judgment is appropriate.

IV.   **THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY WITH REGARD TO DALE'S § 1983 CLAIMS, AND THEREFORE, SUMMARY JUDGMENT IS APPROPRIATE.**

In the event the Court determines that Dale has sufficiently demonstrated a genuine issue of material fact with regard to his individual capacity claims, the record demonstrates that the Defendants are entitled to qualified immunity. Qualified immunity is an immunity from suit, rather than merely a defense to liability. *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). Government officials are entitled to avoid standing trial and facing other burdens of litigation when it has been determined that the official has not violated a clearly established law. *Id.* Qualified immunity protects public officials from "undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald,* 457 U.S. 800, 806 (1982). When a public official's duties "legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken with independence and without fear of consequences." *Id.* at 819. The Supreme Court has stressed the strong public policy encouraging public officials to act with independence and without fear of consequence. *Harlow,* 457 U.S. at 819; see also *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). The general rule of qualified immunity is intended to provide government officials with the ability to "reasonably anticipate when their conduct may give rise to liability for damages." *Davis v. Scherer,* 468 U.S. 555, 562 (1978).

Whether the immunity applies is ordinarily a question of law for the court to determine. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *E-Z Mart Stores, Inc. v. Kirksey,* 885 F.2d 476, 477 (8th Cir. 1989); *Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir. 1989).

"Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant has in fact committed those acts." *Mitchell*, 472 U.S. at 526.   The Courts have repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter*, 502 U.S. at 227.

When determining whether an official is entitled to qualified immunity, the Courts consider (1) whether the official violated a constitutional right upon reviewing the facts in a light most favorable to the nonmoving party and (2) whether that right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 129 S.Ct. 808, 815-816 (2009); *Heartland Academy Community Church v. Waddle*, 595 F.3d 798, 804-805 (8th Cir. 2010).   Courts have the discretion as to the sequence in which these questions are addressed. *Id.*   With regard to the second question, the Court must address the objective legal reasonableness of the official's alleged misconduct, "assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 129 S.Ct. at 822 (quoting *Wilson v. Layne*, 526 U.S. 603, 604 (1999)).

In this case, Dale has failed to demonstrate that the Defendants violated his constitutional rights, and even if such a claim exists, there is no allegation or evidence that the Defendants should have known that their actions were objectively unreasonable or would amount to a constitutional violation.   After the December 16, 2011 incident, Dale was disciplined for actions that he largely admits, and the disciplinary procedure commenced by Officer Hilden was reviewed and investigated by Lisa Kachmarek and

Angela Knutson without any indication that Officer Hilden's actions were improper. Most significantly, there has been no allegation that Lisa Kachmarek or Angela Knutson were also biased against Dale due to his pro se status.  Officer Hilden's actions were objectively reasonable, and there is no evidence indicating that he should have known his actions amounted to a constitutional violation.

With regard to his claim that he was denied access to the courts, the record demonstrates that Dale was represented by counsel when he initially filed grievances with the Defendants, and during this period, he frequently communicated with his attorney and was provided copies of case law.  After choosing to proceed pro se, Dale actively and aggressively defended his case without filing a motion with regard to his access to case law.  Dale has failed to present any evidence demonstrating that the Defendants' actions were unreasonable or that they should have known they were violating the Constitution.

As referenced above, Dale has failed to present any evidence in support of his equal protection claim, and with regard to his housing in Delta North, the record demonstrates that the conditions and restrictions imposed upon Delta North inmates do not amount to "punishment," and there is no case law or evidence that would have put the Defendants on notice that they were committing a constitutional violation.   The Defendants' actions were objectively reasonable in light of existing case law, and therefore, they are entitled to qualified immunity and summary judgment.

**V.     JAMES DALE HAS FAILED TO PRESENT ANY EVIDENCE IN SUPPORT OF HIS DIRECT CLAIMS AGAINST LISA KACHMAREK AND DAVE ISAIS.  HE HAS ALSO FAILED TO PRESENT ANY EVIDENCE IN SUPPORT OF SUPERVISORY CLAIMS AGAINST JOEL L. BROTT AND BRIAN FRANK.**

Dale has conceded that he has no claim against Sergeant Kachmarek, and he has confirmed that Captain Isais had no direct involvement in any of the incidents set forth in his Amended Complaint.  Dale cited an unsupported claim with regard to a statement allegedly made by Captain Isais, but he never alleged that Captain Isais was biased or retaliated against him on the basis of his pro se status.  Therefore, the claims against Sergeant Lisa Kachmarek and Captain Dave Isais should be dismissed.  See *Reynolds v. Dormire*, 636 F.3d 976, 980 (8th Cir. 2011); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985).

Dale's supervisory claims against Sheriff Joel Brott and Administrator Brian Frank are also subject to dismissal.  In the context of a § 1983 claim, a supervisor cannot be held liable for the actions of a subordinate.  *L.L. Nelson Enters*, 673 F.3d at 810.  In order to state a claim against a supervisor, ". . . the plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution." *Id*.  As the Court held in *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995),

> We do not think that a bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff, nor even an explicit charge of inadequate training or supervision of subordinates, is sufficient to state a [§ 1983] claim.

See also *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

In this case, Dale has confirmed that Sheriff Brott and Administrator Frank had no direct involvement in any of the incidents set forth in his Amended Complaint.  He has also conceded that he has no evidence that they tacitly approved or authorized any alleged constitutional violations.  There also is no allegation that they "failed to train" or "failed to supervise" their subordinates.  Dale has failed to present sufficient evidence to maintain supervisory claims against Sheriff Brott or Administrator Frank, and therefore, summary judgment is appropriate.

## CONCLUSION

Based upon the foregoing, the Defendants respectfully request that the Court grant their motion for summary judgment.

**JOHNSON & LINDBERG, P.A.**

Dated:   November 1, 2012        By: s/ Jason M. Hill
                                            Jason M. Hill, #298438
                                            Attorney for Defendants
                                            7900 International Drive
                                            Suite 960
                                            Minneapolis, MN  55425-1582
                                            (952) 851-0700
                                            Direct: (952) 956-6203